UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FILED
'06 AUG 15 A9:21
SOFRON B. NEDILSKY
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                Case No. 06-CR-171

MICHAEL J. HAYS

Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Steven M. Biskupic, United States Attorney for the Eastern District of Wisconsin, and Stephen A. Ingraham, Assistant United States Attorney, and the defendant, Michael J. Hays, individually and by attorney Robert J. Lerner, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in a one-count information which alleges a violation of Title 17, United States Code, Section 506(a) and Title 18, United States Code, Sections 371 and 2319(a) and (b)(1).

3. The defendant has read and fully understands the charges contained in the information and fully understands the nature and elements of the crime with which he has been charged and the charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant will waive a trial by jury in the Western District of North Carolina, where the information was filed, and consent to the transfer and disposition of the charges in the Eastern District of Wisconsin, where he resides, pursuant to Rule 20 of the Federal Rules of Criminal Procedure.

6. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

Background

At all times relevant to this Information:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "software." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public. Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many warez groups protect large FTP archive sites, containing tens of thousands of files of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications, such as "Internet Relay Chat" ("IRC"),

2

encryption, and closed channels to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives in addition to profit include the thrill and social comradery members obtain through clandestine participation in the illegal activity; and the reputation and fame that attends membership and participation in the "top" warez groups.

Object of the Conspiracy

6. From in or before November 2002 through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant, **MICHAEL J. HAYS**, did knowingly and voluntarily combine, conspire, confederate, and agree with others known and unknown to the grand jury, willfully and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a) and (b)(1), and Title 17, United States Code, Section 506(a)(1).

Defendant's Manner and Means within the Conspiracy

7. The ways, manner and means by which the defendant, **MICHAEL J. HAYS**, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, **MICHAEL J. HAYS**, would be a leader of a warez group and an active participant in the warez scene.

    b. It was a further part of the conspiracy that the defendant, **MICHAEL J. HAYS** would supply software to members or affiliates of the group to be cracked and released by the group.

    c. It was further part of the conspiracy that the defendant, **MICHAEL J. HAYS**, would be given access to warez FTP sites to upload and download pirated software, movies, music and games.

    d. It was a further part of the conspiracy that **MICHAEL J. HAYS** would act as a courier, transferring pirated software, movies, music and games between warez FTP sites.

3

Overt Acts

8. In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, **MICHAEL J. HAYS**, from November 8, 2002, through April 21, 2004, in the Western District of North Carolina and elsewhere, transferred over 1,600 digital files, including pirated, copyright-protected software applications, computer games, movies and music, to or from a warez FTP site, and each such transfer constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

    a. On November 1, 2003, the defendant, **MICHAEL J. HAYS**, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Norton Antispam 2004*, cracked utility software released by his group.

    b. On November 20, 2003, the defendant, **MICHAEL J. HAYS**, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Adobe Indesign CS Version 3.0*.

    c. On February 20, 2004, the defendant, **MICHAEL J. HAYS**, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Pinnacle Studio Version 8.4*.

All in violation of Title 18, United States Code, Section 371.


7. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 6. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to these facts and that these facts establish his guilt beyond a reasonable doubt:

    The "warez scene" is an online subculture or community in which organized groups and individuals engage in the illegal reproduction and distribution of copyrighted works over the Internet. The term "warez" refers to infringing digital copies of software, movies, music and games. The defendant was a member and leader of one of many organized "warez groups." His group was known as a release group, meaning that its members specialized in being the first to release infringing material onto the internet after removing any security or copy protection controls, a process known as "cracking."

As a leader, the defendant organized the activities of other group members. The defendant also acted as a supplier, providing original software to the group for cracking, and a courier, transferring infringing digital works from one internet site to another to facilitate distribution. The sites that store warez are known as FTP sites. Most warez sites are not accessible to the general public, but are instead strictly governed by security and access controls. Warez users typically do not access a server directly, but typically pass through a "bounce box" to do so, in order to mask the location of both the FTP site and those accessing it. A bounce box is simply another computer on the internet that authenticates its intended users and redirects them to another site.

Once a user accesses the FTP server through the bounce box, the server will typically record (or log) the user's name, the names of all files that the user transferred into or out of the server, and the internet address of the computer that initiated the transfers. FTP transfer logs were retained from several FTP sites during this investigation. One of them reflected over 1,000 file transfers initiated from the defendant's computer during the time period from November 2002 until April 21, 2004, the day that a search warrant was executed at the defendant's residence in Delafield, Wisconsin. The files uploaded by Hays to the server during this period of time included Adobe After Effects (retail value: $649), InDesign ($699), Photoshop ($609), Illustrator ($399), Macromedia Director ($999) and Avid Digidesign Pro Tools ($3,995). The retail value of the infringed digital works released and distributed by the defendant's group during this period of time exceeded $120,000 (each distribution counted separately).

Warez group members often communicated via private-channel Internet Relay Chat (IRC). In these sessions, the defendant identified himself as a leader of the group.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in this offense.

## PENALTIES

8. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 5 years and $250,000. The charge also carries a mandatory special assessment of $100.00, and a maximum of 3 years of supervised release. The parties further recognize that a restitution order may be entered

5

by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 25 of this agreement.

9. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## **ELEMENTS**

10. The parties understand and agree that in order to sustain the charge of conspiracy as set forth in count 1, the government must prove each of the following propositions beyond a reasonable doubt:

 (1) that the conspiracy as charged in the information existed;

 (2) that the defendant knowingly became a member of the conspiracy with an intention to further the conspiracy; and

 (3) that an overt act was committed by at least one conspirator in furtherance of the conspiracy.

## **SENTENCING PROVISIONS**

11. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 6. The defendant acknowledges and agrees that his attorney in turn has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

15. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the

7

sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which defendant is pleading guilty.

## Offense Level

17. The parties agree to recommend to the sentencing court that the applicable offense level for the offenses charged in the information is as follows:

| | |
|---|---:|
| Base Offense Level [USSG § 2B5.3(a)]: | 8 |
| Specific Offense Characteristics: | |
| The offense involved the uploading of infringing items [USSG § 2B5.3(b)(2)]: | 2 |
| The infringement amount, as this phrase is defined in USSG § 2B5.3 comment. (n. 2), that was known or reasonably foreseeable to the defendant, was in excess of $120,000 but less than $200,000 [USSG §§ 2B5.3(b)(1), 2B1.1(b)(1)]: | 10 |
| The defendant was an organizer or leader of criminal activity involving more than 5 participants [USSG § 3B1.1 (a)] | 4 |
| Adjusted Offense Level: | 24 |

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. The defendant acknowledges, understands, and agrees that conduct consistent with the acceptance of responsibility includes but is not limited to the defendant's voluntary identification and disclosure to the government of any and all actual or potential victims of the offenses prior to sentencing. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a),

8

the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to apprise the district court and the probation office of any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement, including the length of any term of imprisonment and fine to be imposed.

### Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 8 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

23. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

### Special Assessment

24. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

25. The United States will not recommend restitution in this case for reasons set forth in 18 U.S.C. §§ 3663(a)(1)(B)(ii) and 3663A(1)(c)(3)(B), although the defendant understands that victims of the offense will receive notification of the case and may appear and request that the court order restitution.

### Forfeiture

26. The defendant agrees that all properties listed in the information are forfeitable to the United States. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties.

## DEFENDANT'S COOPERATION

27. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's

10

Case 2:06-cr-00174-JPS   Filed 08/15/06   Page 10 of 20   Document 2

cooperation. Based on the cooperation the defendant has rendered as of this date, it is the intention of the government to recommend a downward departure from any applicable statutory mandatory minimum and the applicable sentencing guideline range, the extent of which will be determined within the sole discretion of the government. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

28. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

> a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.
>
> b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.
>
> c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.
>
> d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant

11

would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

29. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

30. The defendant acknowledges and understands that he will be adjudicated guilty of each offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

31. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

32. Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel.

## GENERAL MATTERS

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

36. The defendant understands that pursuant to the victims' rights statutes and the regulations promulgated under those statutes by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

13

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

37. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

38. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5-3-06

Michael J. Hays
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5-3-06

Robert J. Lerner
Attorney for Defendant

For the United States of America:

Date: 8/14/06

Steven M. Biskupic
United States Attorney

Date: 8/14/06

Stephen A. Ingraham
Assistant United States Attorney

15

Case 2:06-cr-00174-JPS   Filed 08/15/06   Page 15 of 20   Document 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO.

| UNITED STATES OF AMERICA, | ) | **BILL of INFORMATION** |
|---|---|---|
| | ) | |
| | ) | Violation: |
| v. | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 2319 |
| | ) | 17 U.S.C. § 506 |
| MICHAEL J. HAYS | ) | |

THE UNITED STATES ATTORNEY CHARGES:

COUNT ONE

Background

At all times relevant to this Information:

1. During the 1990s, individuals skilled in cracking digital copyright protection systems organized themselves into national and international groups called "warez" groups after the term "soft*ware*." These groups are dedicated to intellectual property "piracy," that is, the unauthorized, illegal reproduction and distribution of copyrighted computer software, including games, and digital entertainment, including movies and music. Warez groups distribute pirated software, movies and music over the Internet, and compete with one another to be the first to release new, high quality pirated products, within an elaborate underground Internet society, known as the "warez scene." Due in part to the activities of warez groups, pirated versions of software applications, movies and music are available worldwide, electronically and on optical disc, sometimes even before they are made commercially available to the public.

2. Warez groups are often structured, hierarchical organizations comprised of members in various countries who have specialized skills and roles in the piracy of digitized intellectual property. Some warez groups specialize in obtaining "pre-release" intellectual

property for piracy, often from company or distribution insiders, or software testers, who have access to final versions of new products which have yet to be released to the public. Other warez groups concentrate on "cracking" copyright protection systems by removing or otherwise circumventing copyright protection controls like encryption, serial numbers, tags, duplication controls, and/or security locks. Still other groups act as couriers, distributing pirated intellectual property over the Internet to warez sites worldwide.

3. Warez members typically store their pirated intellectual property on servers employing a protocol known as a file transfer protocol ("FTP") which allows other individuals to download pirated product from, and upload pirated product to, that server. Access to warez FTP servers, or sites, is nearly always password-protected, and many warez groups protect large FTP archive sites, containing tens of thousands of files of pirated software, movies and music, through a combination of sophisticated security measures.

4. Members of the warez scene frequently communicate with each other over the Internet using "real time" software applications, such as "Internet Relay Chat" ("IRC"), encryption, and closed channels to avoid detection by law enforcement. As a further security precaution, most warez members conceal their Internet identities by assuming aliases, and many disguise their Internet addresses, and thus their true locations, by routing Internet communications through another computer known as a "virtual host" or "bounce box" which is configured to appear falsely as the source of the communication.

5. The reasons why individuals become members of warez groups vary. Common to virtually all warez members, however, is the desire for personal financial gain through access to vast quantities of free software, movies and music available on warez FTP sites. A few of the larger warez groups also sell their pirated product for commercial gain. Other motives in addition to profit include the thrill and social comradery members obtain through

clandestine participation in the illegal activity; and the reputation and fame that attends membership and participation in the "top" warez groups.

Object of the Conspiracy

6. From in or before November 2002 through April 21, 2004, both dates being approximate and inclusive, in Mecklenburg County, in the Western District of North Carolina, and elsewhere, the defendant, **MICHAEL J. HAYS**, did knowingly and voluntarily combine, conspire, confederate, and agree with others known and unknown to the grand jury, willfully and for purposes of private financial gain, to infringe a copyright by the reproduction and distribution, during a 180-day period, of at least ten (10) copies of one (1) or more copyrighted works which have a total retail value of more than $2,500, in violation of Title 18, United States Code, Section 2319(a) and (b)(1), and Title 17, United States Code, Section 506(a)(1).

Defendant's Manner and Means within the Conspiracy

7. The ways, manner and means by which the defendant, **MICHAEL J. HAYS**, sought to achieve the objects of this conspiracy included, but were not limited to, the following:

    a. It was a part of the conspiracy that the defendant, **MICHAEL J. HAYS**, would be a leader of a warez group and an active participant in the warez scene.

    b. It was a further part of the conspiracy that the defendant, **MICHAEL J. HAYS**, would supply software to members or affiliates of the group to be cracked and released by the group.

    c. It was further part of the conspiracy that the defendant, **MICHAEL J. HAYS**, would be given access to warez FTP sites to upload and download pirated software, movies, music and games.

d. It was a further part of the conspiracy that **MICHAEL J. HAYS** would act as a courier, transferring pirated software, movies, music and games between warez FTP sites.

Overt Acts

8. In furtherance of the conspiracy, and to accomplish its unlawful objectives, the defendant, **MICHAEL J. HAYS**, from November 8, 2002, through April 21, 2004, in the Western District of North Carolina and elsewhere, transferred over 1,000 digital files, including pirated, copyright-protected software applications, computer games, movies and music, to or from a warez FTP site, and each such transfer constituted an overt act. Among these overt acts, to enumerate but a few, were the following:

a. On November 1, 2003, the defendant, **MICHAEL J. HAYS**, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Norton Antispam 2004,* cracked utility software released by his group.

b. On November 20, 2003, the defendant, **MICHAEL J. HAYS**, uploaded or caused to be uploaded to a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Adobe Indesign CS Version 3.0.*

c. On February 20, 2004, the defendant, **MICHAEL J. HAYS**, downloaded or caused to be downloaded from a warez FTP server, located in the Western District of North Carolina, a pirated copyright-protected digital title known as *Pinnacle Studio Version 8.4.*

All in violation of Title 18, United States Code, Section 371.

## Forfeiture Allegations

1. The allegations in this Information are realleged as if fully set forth here, for the purpose of alleging forfeiture, pursuant to Title 17, United States Code, Sections 506(b) and 509.

2. If convicted of the offense set forth in the Information, **MICHAEL J. HAYS**, the defendant herein, shall forfeit all infringing copies, all equipment used in the manufacture of infringing copies, all articles by means of which infringing copies may be reproduced, and all devices for manufacturing, reproducing or assembling infringing copies. Such property includes, but is not limited to, the following specific items found in the possession of **MICHAEL J. HAYS** on or about April 21, 2004:

    1. One Dell laptop 62TC401
    2. One Generic Computer
    3. Multiple hard drives, CD Roms, DVDs, floppy disks and tapes containing infringing digital material

                GRETCHEN C. F. SHAPPERT
                UNITED STATES ATTORNEY

                COREY ELLIS
                ASSISTANT UNITED STATES ATTORNEY

                ERIC J. KLUMB
                SENIOR COUNSEL
                U.S. DEPARTMENT OF JUSTICE

The undersigned asserts, under oath, that there is probable cause to believe that the crimes alleged in the foregoing Bill of Information were committed by **MICHAEL J. HAYS**.

                Corey Ellis
                Assistant United States Attorney